IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

    Plaintiff,                                          CASE NO.: 8:23-cv-02970-MSS-UAM

v.

CAROL T. TAYLOR, et al.

    Defendants,
_____/

**PLAINTIFF'S REPLY TO DEFENDANTS CAROL T. TAYLOR'S
AND SHELDON FAULK'S RESPONSE IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND MOTION FOR DEFAULT FINAL DECLARATORY JUDGMENT**

Plaintiff, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ("State Farm"), respectfully replies to Carol T. Taylor's and Sheldon Faulk's Response in Opposition to Plaintiff's Motion for Summary Judgment and Motion for Default Final Declaratory Judgment and states as follows.

**I.    Summary**

Defendants' Response in Opposition ("Response") (ECF No. 31) makes no coverage-by-estoppel argument. The Response also makes no argument that the insurance policies covering Bridgette Copeland-Gould's personal vehicles, by their terms, require State Farm to defend or indemnify GLOBAL PIONEER or PATRICIA SOCORRO. The Response also proffers no affidavits or deposition testimony contradicting the affidavits submitted by State Farm. Instead, the Response argues that

the Certificates of Liability Insurance ("Certificates") either modify the insurance policies or are part of them.

As explained below, the terms of the Certificates provide that they neither modify existing coverage nor provide insurance coverage themselves. Additionally, though it is true that Sarah Flowers had the authority to bind coverage, her unrebutted affidavit and deposition testimony attests that, though she had the power to do that, she did not do that. To the contrary, her sworn testimony indicates that Certificates were intended to provide information about previously issued insurance policies and that, to the extent that they indicated that the insured on those policies was GLOBAL PIONEER, they were incorrect. Her unrebutted testimony also indicates that she would not have sold GLOBAL PIONEER an insurance policy covering its operations because there was no such insurance product available from State Farm.

II.     **The Response raises no genuine issue of material fact.**

"When a party properly supports a motion for summary judgment, the nonmoving party must come forward with 'concrete evidence from which a reasonable juror could return a verdict in his favor.'" *Hinson v. Bias*, 927 F.3d 1103, 1115 (11th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). "It is not enough for the nonmoving party to merely assert that the jury might, and legally could, disbelieve the moving party's evidence." *Hinson*, 927 F.3d at 1115-16 (quoting *Anderson*, 477 U.S. at 256) (internal quotes omitted) (alteration omitted). "Instead, the nonmoving party must present 'affirmative evidence' that would allow a reasonable jury to rule for him." *Hinson*, 927 F.3d at 1116 (quoting *Anderson*, 477 U.S. at 257).

Here, the Response posits that, contrary to the sworn testimony of Sarah Flowers, the Certificates may have actually been binders of new coverage or a modification of existing coverage to add GLOBAL PIONEER as an insured. But Ms. Flowers's affidavit, and the Certificates themselves, are clear that they were informational documents and that they were issued in error. The Response proffers no affidavit or deposition testimony to contradict Sarah Flowers's sworn testimony.

The Response also insinuates that the "jury could find that STATE FARM is obligated to defend and indemnify GLOBAL PIONEER and SOCORRO . . . ." (ECF No. 31 at 5.) But a jury would not be authorized to make such a determination. The construction of an insurance policy is a question of law for the Court, not a question of fact for the jury. *See Storfer v. Guarantee Trust Life Ins. Co.*, 666 F.3d 1277, 1279 (11th Cir. 2012) (quoting *Jones v. Utica Mut. Ins. Co.*, 463 So. 2d 1153, 1157 (Fla. 1985)). Here, the language of the insurance policies, the language of the Certificates, and the circumstances surrounding the issuance of the Certificates are all undisputed. All that remains to be decided is the question of whether the undisputed facts give rise to a contractual duty to defend and indemnify PATRICIA SOCORRO and GLOBAL PIONEER. That is a question of law for the Court to determine based on the undisputed facts, and the question is ripe for determination.

**III.    The Response's reliance on *Liberty Mutual v. State Farm Florida* is misplaced.**

The Response references *Liberty Mutual Fire Insurance Co. v. State Farm Florida Insurance Co.*, Nos. 20-12970, No. 20-13637, 2022 WL 1025164 (11th Cir. Apr. 6, 2022). *Liberty Mutual* is unpublished and involves an *Erie* guess that, in its own words,

3

attempted to prognosticate how the Florida courts would resolve the issue before it. *Id.* at *3. In *Liberty Mutual*, a homeowner's insurer ("Liberty Mutual") hired a contractor to do repairs on a house and required the contractor to obtain insurance coverage naming it as an additional insured. *Id*. at *2. The contractor purchased a liability-insurance policy and an umbrella policy from State Farm Florida, and State Farm Florida sent Liberty Mutual insurance certificates showing that it had been named as an additional insured. *Id.* at *2. For reasons not disclosed in the opinion,[1] State Farm Florida never issued corresponding additional-insured endorsements for the policies, but all involved parties intended that Liberty Mutual be an additional insured. *Id.* at *2. Acknowledging that there was no Florida case on point, the Eleventh Circuit held: "[O]ur *Erie* guess is that, under Florida law, Liberty's certificate of insurance entitled it to the same coverage as [the contractor] under the contractors policy." *Id.* at *3.

The case at bar is different in several respects. First, in *Liberty Mutual*, all parties intended that Liberty Mutual would be an additional insured under the contractor's

---

[1] It seems initially peculiar that Liberty Mutual did not pursue a claim for contract reformation or that State Farm Florida would oppose reformation under the circumstances. Context is supplied by a related opinion, *Liberty Mutual Fire Insurance Co. v. State Farm Florida Insurance Co.*, 770 Fed. App'x 475 (11th Cir. 2019), which explains that the additional-insured endorsement, had it been issued, would have covered Liberty Mutual for its vicarious liability for the contractor but not for its own direct liability. *Id.* at 477. Accordingly, succeeding on a claim for contract reformation would not have resulted in coverage for Liberty, so Liberty had no reason to pursue contract reformation. State Farm Florida, for its part, opposed Liberty's claim for coverage because, had the parties' intentions been manifest by the policies, the policies still would not have covered Liberty's direct negligence, not because State Farm Florida had not intended that Liberty Mutual be an additional insured.

4

policies, but here Ms. Copeland-Gould did not request that GLOBAL PIONEER or PATRICIA SOCORRO be additional insureds; she requested only a policy covering her personal vehicles for "pleasure/work/school" and stated that she worked as a customer-service representative. (ECF No. 28-3 at 2-4 ¶¶ 9-10, 13 & Ex. 3-4 thereto.) Second, in *Liberty Mutual*, the insurer sent the insurance certificate to Liberty Mutual before the loss and Liberty Mutual relied on it, but here the parties seeking to use the Certificates to expand coverage (CAROL T. TAYLOR and SHELDON FAULK) never obtained or relied on either Certificate until after the accident had already happened and after suit had already been filed. (Def. Taylor's Answers to Pl.'s Ints. ¶¶ 1-2 (ECF No. 28-9 at 1-2); Def. Faulk's Answers to Pl.'s Ints. ¶¶ 1-2 (ECF No. 28-8 at 1-2).) Third, in *Liberty Mutual*, the party trying to enforce the insurance certificate was the party to whom it had been issued, but here the Certificates were issued to "Access 2 Care," not to any of the Defendants. *Liberty Mutual* is not published, not binding, *see* 11th Cir. Local Rule 36-2, and is a mere *Erie* guess concerning a fact pattern very different from the one before the Court.

**IV.    The Certificates are not part of the policies and do not create ambiguities.**

The Response argues that "the certificate of liability insurance in this case is part of the insurance policy, regardless of the certificate's disclaiming language." (ECF No. 31 at 7.) The Response then contends that "there exists an ambiguity between the certificates and the contracts, which – in accordance with the rule that ambiguities be construed against insurers and in favor of broad coverage – means that the certificates

5

entitle GLOBAL PIONEER to coverage, regardless of disclaiming language." (ECF No. 31 at 7.)

But the Certificates are not part of the policies.[2] As a general rule, "a certificate of insurance alone does not create coverage or legal obligations between the insurer and the certificate holder." 3 Plitt *et al.*, *Couch on Ins.* § 40:31 (3d ed., updated June 2024) (footnote omitted). "Generally, a certificate of insurance is not considered to be a part of the insurance contract; it is merely evidence of the insurance." *Id.* (footnote omitted). "Accordingly, a certificate of insurance cannot contradict the terms of a policy but instead only provides information as to the contents of the policy." *Id.* (footnote omitted). *Cf. Bailey v. Netherlands Ins. Co.*, 615 F. Suppp. 2d 1332, 1336 (M.D. Fla. 2009) ("It is well-settled that a certificate of insurance is not part of an insurance contract.") (citations omitted). Because the Certificates are not part of the insurance policies, they are parol evidence and are not admissible to create an ambiguity in the otherwise unambiguous language of the insurance policies. *See Vencor Hosps. South, Inc. v. Blue Cross & Blue Shield of R.I.*, 86 F. Supp. 2d 1155, 1160 (S.D. Fla. 2000) (citing *J.M. Montgomery Roofing Co. v. Fred Howland, Inc.*, 98 So. 2d 484, 485-86 (Fla. 1957)).

---

[2] The Response's reference to section 627.402(3) (2024), ignores the statute's preamble text, which only purports to define terms "[a]s used in this part." *See* § 627.402, Fla. Stat. (2024). The Response points to section 624.402's definition of "policy" but does not point to any other statute "in this part" where that term is used. By contrast, the policies themselves define what documents are part of them, stating: "YOUR POLICY CONSISTS OF THIS DECLARATIONS PAGE, THE POLICY BOOKLET – FORM 9810A, AND ANY ENDORSEMENTS THAT APPLY, INCLUDING THOSE ISSUED TO YOU WITH ANY SUBSEQUENT RENEWAL NOTICE." (ECF Nos. 1-1 at 1, 1-2 at 1) (emphasis in original). The affidavit of Jonathan Owen affirms that these are true and correct copies of the policies as they were in effect on the date of the accident. (ECF No. 28-5 at 2 ¶ 6.)

V. **The Certificates' disclaimer language precludes using them to modify the policies.**

The Response's argument also flies in the face of the Certificates' plain language, which expressly disavows modification of the policies:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

(ECF No. 1-3.) Contrary to the Response's argument that this language has no effect, courts do in fact give effect to this plain language, even where certificates of insurance erroneously misidentify nonparties as insureds. *See Progressive Exp. Ins. Co. v. Global Drilling Inc.*, No. 6:16-cv-298-Orl-40DCI, 2017 WL 11629877, at *4 (M.D. Fla. Sept. 15, 2017) (entering summary judgment against a putative insured based on "language that plainly states that the 'certificate is issued as a matter of information only and confers no rights upon the certificate holder'"); *DTG Ops., Inc. v. Manheim Remarketing, Inc.*, No. 6:10-cv-835-Orl-31GJK, 2010 WL 3259697, at *6 (M.D. Fla. Aug. 8, 2010) (dismissing a breach-of-contract claim by a putative insured that was relying on a certificate that "is not a part of the Insurance Policy and clearly disclaims that it does not confer any 'rights upon the certificate holder' or otherwise 'amend, extend or alter the coverage' provided by the policy"); *cf. Robert L. Strauss, P.A. v. Gemini Ins. Co.*, __ F. Supp. 3d __, 2024 WL 3558128, at *9 (S.D. Fla. July 26, 2024) (rejecting a putative

insured's fallback argument that a certificate of liability insurance proves the existence of a contract requiring it to be an additional insured because "the plain language of the certificate is abundantly clear: it confers *no rights upon the certificate holder*") (emphasis in original); *Gersbeck v. Islamorada Asset Mgt., Inc.*, No. 4:16-CV-10026-JLK, 2018 WL 4689116 (S.D. Fla. Sept. 28, 2018) ("[T]he Certificate of Insurance [] is not relevant in interpreting the Policy. It expressly states on each of its two pages that "[t]his certificate does not amend, alter or extend the coverage afforded by the policy referenced[.]") (alteration in original).

To illustrate, in *Official Cargo Transport Co. v. Certain Interested Underwriters at Lloyds of London*, No. 02-21828-CIV-MORENO (S.D. Fla. May 12, 2004), ECF No. 271 (attached as "Exhibit A"), a cargo-hauling company ("Official Cargo") contracted with Crowley Liner Services, Inc. ("Crowley") to transport garments from Florida to Pennsylvania by truck. *Id.* at 3. Official Cargo sought insurance through D&D Insurance Agency, Inc., which procured insurance for Official Cargo and provided Crowley with a Certificate of Liability Insurance identifying Crowley as an additional insured. *Id.* at 3-4. After the trailer containing the garments was stolen, the insurer sought a declaration that Crowley was neither a named insured nor an additional insured under the policy. *Id.* at 13. In rejecting Crowley's contention that the Certificate of Insurance required the insurer to treat it as an additional insured, the court referred to the certificate's disclaimer language, which stated: "THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS

CERTIFICATE DOES NOT AMEND, EXTEND, OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW." *Id.* at 14 (emphasis in original). The court held the certificate "by its own terms, cannot modify or extend the underlying insurance contract," which did not name Crowley as an additional insured. *Id.*[3]

In affirming, the Eleventh Circuit Court of Appeals noted "Crowley was not a named insured under the policy, nor had [the insurer] agreed to add Crowley as an insured at the time of the claim." *Official Cargo Transp. Co. v. Underwriters at Lloyd's of London*, 143 Fed. App'x 173, 175 n.1 (11th Cir. 2005). The court affirmed the district court's holding that the certificate "did not in any way evidence that [the insurer] had agreed to the addition of Crowley as a named insured. Indeed, the certificate stated that it 'does not amend, extend or alter the coverage afforded by the policies.'" *Id.*

*Official Cargo* was a much closer call than this case. In *Official Cargo*, D&D Insurance Agency actually intended to procure coverage for Crowley as an additional insured and requested that it be named as such, though there was no return communication from the insurer indicating that it agreed to the request. *Official Cargo,* No. 02-21828-CIV-MORENO (S.D. Fla. May 12, 2004), ECF No. 271 at 13-14. Here, by contrast, Ms. Flowers never intended to make GLOBAL PIONEER an insured,[4]

---

[3] Though the district court's order indicates it had denied the insurer's motion for summary judgment, *id.* at 16, this was a scrivener's error corrected by a subsequent order. *See Official Cargo Transport Co. v. Certain Interested Underwriters at Lloyds of London*, No. 02-21828-CIV-MORENO (S.D. Fla. June 28, 2004), ECF No. 285 at 2-3 (attached as Exhibit B).

[4] Ms. Flowers believed, incorrectly, that she was listing the name of the insured on an already-issued policy naming GLOBAL PIONEER as the insured, though she did not check to make sure that GLOBAL PIONEER was in fact the name of the insured. (*See* ECF No. 28-3 at 3-4 ¶ 12.)

9

would have declined to procure such coverage even if Ms. Copeland-Gould had requested it (ECF No. 28-3 at 17), and never sent the Certificates to State Farm (ECF No. 28-3 at 4 ¶ 15), which was unaware of them (ECF No. 28-5 at 2 ¶ 5). Moreover, in *Official Cargo*, the putative insured (Crowley) received the certificate of insurance prior to the loss and relied on it, but CAROL T. TAYLOR and SHELDON FAULK concede that they did not obtain or rely upon the Certificates until well after the accident and after they filed suit. (ECF Nos. 28-8 at 1-2 ¶¶ 1-2, 28-9 at 1-2 ¶¶ 1-2.) If the certificates in *Official Cargo* were held not to modify the terms of the insurance policy under far more compelling circumstances, the Certificates in this case provide no cause for reaching a different result.

WHEREFORE, for the foregoing reasons, State Farm respectfully requests that the Court grant the relief requested in its motion (ECF No. 29 at 18-19).

BUTLER WEIHMULLER KATZ CRAIG LLP

s/ James Michael Shaw, Jr.
JAMES MICHAEL SHAW, JR., ESQ.
Florida Bar No.: 0677851
jshaw@butler.legal
NAOMI R. ROBERTSON, ESQ.
Florida Bar No.: 1032076
nrobertson@butler.legal
Secondary: mbumoskey@butler.legal
mmcnaull@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:  (813) 281-1900
Facsimile:   (813) 281-0900
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I certify that a copy hereof has been furnished to:

    Thomas D. Roebig, Jr., Esq.
    Sarah K. Bartlett, Esq.
    FLORIN ROEBIG, PA
    777 Alderman Road
    Palm Harbor, FL 34683
    tdr@florinroebig.com
    sbartlett@florinroebog.com

via CM/ECF on August 14, 2024.

                                        s/ James Michael Shaw, Jr.
                                        JAMES MICHAEL SHAW, JR., ESQ.