UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**STATE FARM MUTUAL**
**AUTOMOBILE INSURANCE**
**COMPANY,**

    Plaintiff,

v.                                                  Case No: 8:23-cv-2970-MSS-LSG

**CAROL T. TAYLOR, SHELDON**
**FAULK, PATRICIA SOCORRO,**
**GLOBAL PIONEER BUSINESS**
**SOLUTIONS, LLC,**

    Defendants.
_____

## ORDER

**THIS CAUSE** comes before this Court for consideration of Plaintiff State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment and Default Final Declaratory Judgment, (Dkt. 29), Defendants Carol T. Taylor and Sheldon Faulk's response, (Dkt. 31), and Plaintiff's reply thereto. (Dkt. 33) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **DENIES** Plaintiff State Farm Mutual Automobile Insurance Company's Motion.

    **I.**    **BACKGROUND**

This case concerns whether Plaintiff State Farm must defend and indemnify Defendants Patricia Socorro and Global Pioneer Business Solutions, LLC in the state

court litigation brought against them by Defendants Taylor and Faulk. The following undisputed facts arise from the Complaint, Plaintiff's filings in support of the Motion, Defendants Taylor and Faulk's filings in support of their response, and the Parties' Stipulation of Agreed Material Facts. (Dkts. 1, 28, 30, 32)

### a. Undisputed Facts

#### i. The State Farm Insurance Policies

State Farm insured the personal vehicles of the late Bridgette Copeland-Gould via two insurance policies, Policy Number E18 1629-B19-59A and Policy Number E24 5495-C26-59. (Dkt. 1-1 at 1; Dkt. 1-2 at 1; Dkt. 32 at ¶ 5) The policies' declarations pages show only Copeland-Gould as the named insured, (Dkt. 1-1 at 1; Dkt. 1-2 at 1), and the policies define "You" or "Your" as "the named insured or named insureds shown on the Declarations Page." (Dkt. 1-1 at 8; Dkt. 1-2 at 8) The policies note, "If a named insured shown on the Declarations Page is a person, then 'you' or 'your' includes the spouse of the first person shown as a named insured if the spouse resides primarily with that named insured." (Id.) "Person means a human being." (Dkt. 1-1 at 7; Dkt. 1-2 at 7)

Thus, the policies define "Insured" as:

1. [Copeland-Gould] and resident relatives for:
   a. the ownership, maintenance, or use of:
      (1) [Copeland-Gould's] car;
      (2) a newly acquired car; or
      (3) a trailer; and
   b. the maintenance or use of:
      (1) a non-owned car; or
      (2) a temporary substitute car;

2. [Copeland-Gould] and [Copeland-Gould]'s spouse who resides primarily with [Copeland-Gould] for the maintenance or use of a car that is owned by, or furnished by an employer to, a person who resides primarily in [Copeland-Gould's] household, but only if such car is neither owned by, nor furnished by an employer to, [Copeland-Gould] or [her] spouse;

3. any other person for his or her use of:
   a. [Copeland-Gould's] car;
   b. a newly acquired car;
   c. a temporary substitute car; or
   d. a trailer while attached to a car described in a., b., or c. above.

   Such vehicle must be used with [Copeland-Gould's] express or implied permission; and

4. any other person or organization vicariously liable for the use of a vehicle by an insured as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is neither owned by, nor hired by, that other person or organization.

(Dkt. 1-1 at 8–9; Dkt. 1-2 at 8–9)

The first policy, E18 1629-B19-59A, indicates a policy period beginning September 26, 2016 and ending March 26, 2017. (Dkt. 1-1 at 1) The second policy, E24 5495-C26-59, indicates a policy period beginning January 9, 2017 and ending August 19, 2017. (Dkt. 1-2 at 1)

### ii. *The Underlying Action*

Copeland-Gould was the vice-president of Global Pioneer, a business involved in providing private transportation services. (Dkt. 32 at ¶¶ 1, 2) On July 18, 2017, an employee of Global Pioneer, Defendant Socorro, was involved in an accident while using her own vehicle to transport Defendant Taylor to a doctor's appointment. (<u>Id.</u>

at ¶¶ 3–4) Taylor and her husband, Defendant Faulk, then sued Global Pioneer and Socorro for negligence on March 15, 2019 (the "Underlying Action"). (Id. at ¶¶ 4, 10)

In the Underlying Action, Taylor and Faulk allege Socorro was driving her 2012 Kia when the accident occurred. (Id. at ¶ 11) They further allege that Socorro was the owner of the vehicle, and that she was operating it in the course and scope of her employment with Global Pioneer. (Id.) State Farm has been providing and continues to provide a defense to Socorro and Global Pioneer under a reservation of rights. (Id. at ¶ 12) The Underlying Action remains pending in the Circuit Court for the Tenth Judicial Circuit in and for Polk County, Florida. (Id. at ¶ 13)

### iii. *The Certificates of Liability Insurance*

Global Pioneer was not the named insured on either of Copeland-Gould's policies with State Farm. (Dkts. 1-1, 1-2) Likewise, Socorro was not the named insured on either of Copeland-Gould's policies with State Farm. (Dkts. 1-1, 1-2) The Parties agree that Socorro is not related to Copeland-Gould by blood, marriage, or adoption. (Dkt. 32 at ¶ 9) The Parties agree that Socorro and Copeland-Gould never resided together. (Id.)

Nonetheless, the Parties dispute whether State Farm must provide liability coverage to Global Pioneer or Defendant Socorro with respect to the accident that injured Defendant Taylor. Taylor and Faulk believe State Farm must provide coverage to Global Pioneer and Socorro because of two certificates of liability insurance that a State Farm broker issued and that Taylor and Faulk received during discovery in the Underlying Action.

4

By way of background, Global Pioneer was a party to a "subcontractor agreement" with Access2Care, LLC, a business that arranges transportation for persons to obtain medical care. (Dkts. 30-2, 30-4; Dkt. 28-1 at ¶ 2) Under the subcontractor agreement, Global Pioneer was obligated to maintain "comprehensive general and automobile liability coverage" and to "cause [Access2Care, LLC] to be added as an additional insured to all such policies." (Dkt. 28-1 at 4–5) Upon execution of the subcontractor agreement, Global Pioneer was to provide "certificates of insurance evidencing coverage" to Access2Care, LLC. (Id. at 5)

On August 16, 2016, in an effort to satisfy Global Pioneer's contractual obligation with Access2Care, LLC, Copeland-Gould contacted Costello Insurance and Financial Services, which is an insurance agency "from which members of the public can purchase insurance products from" State Farm. (Dkt. 28-3 at ¶¶ 3–4) In the field of automobile insurance, Costello Insurance only sells State Farm insurance.[1] (Dkt. 30-1 at 7:15-25) Copeland-Gould spoke with Flowers, a Costello Insurance employee who had "personally assisted [Copeland-Gould] in applying for policy number E18 1629-B19-59." (Dkt. 28-3 at ¶¶ 3–4, 9)

Copeland-Gould requested Flowers issue a certificate of liability insurance for her insurance policy E18 1629-B19-59A. (Dkt. 28-3 at ¶ 11) Flowers attests she created a certificate of insurance and "typed in the policy number, policy limits, and name and

---

[1] Flowers testified that Costello Insurance sells flood insurance policies through the National Flood Insurance Program. (Dkt. 30-1 at 7:14-25) "[E]xcepting the national flood coverage[,]" all other insurance products sold by Costello Insurance are State Farm insurance products. (Id.)

5

address of the insured as supplied to [her] by [Copeland-Gould]." (Id. at ¶ 12) Flowers attests she "should have, but did not, check Costello Insurance's records to verify that [Copeland-Gould] was supplying the correct name of the insured under the" policies. (Id.) Flowers states she "took Ms. Copeland-Gould's word for it that [Global Pioneer] was the name of the insured under [those] policy number[s] . . . ." (Id.) In her deposition, Flowers testified,

> I know I filled out the Certificate of Insurance that says Global Pioneer. And I incorrectly did that. I should not have put that name. I should have verified the information when the conversation had to have been had with [Copeland-Gould]. I should have verified information. Had I done what I should have done, I would have never put Global Pioneer on the Certificate of Insurance.

(Dkt. 30-1 at 35:4-11) She further explained,

> [Copeland-Gould] would have had to have told me Global Pioneer as the named insured for this policy. And without verifying what the named insured was I could have trusted what – I trusted what she was telling me and filled out the form, signed it and sent it to her. The policy is not for Global Pioneer. There is no policy for Global Pioneer. That policy is for Bridgette Copeland-Gould. I should have never signed the form. I should have more thoroughly done my job.

(Id. at 38:14-22)

Six months later, on February 22, 2017, Copeland-Gould again contacted State Farm's exclusive broker, Flowers, to request a certificate of liability insurance that listed both of Copeland-Gould's insurance policies, E18 1629-B19-59A and E24 5495-C26-59. (Dkt. 28-3 at ¶ 13) Flowers had "personally assisted [Copeland-Gould] in applying for policy number E24 5495-C26-59 . . . ." (Id.) Flowers attests she used "information that [Copeland-Gould] provided to [her] and information copied and

6

modified from" the first certificate. (Id.) When preparing the second certificate, Flowers again did not verify whether the information was correct. (Id.) Flowers states she never sent either certificate to State Farm. (Id. at ¶ 15)

The certificates featured State Farm's logo. (Dkts. 30-2, 30-4) The certificates identified Global Pioneer as the entity insured by Copeland-Gould's State Farm insurance policies. (Id.) The "Certificate Holder" of both certificates was Access2Care, LLC. (Id.) The certificates both contain the following language:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

(Id.)

Flowers testified she has the authority to "put [] polic[ies] in force," (Dkt. 30-1 at 27:3-6), and that she "can bind [State Farm] coverage for a policyholder." (Id. at 51:15)

### b. Procedural Background

State Farm initiated this action against Defendants Socorro, Global Pioneer, Taylor, and Faulk for declaratory relief under 28 U.S.C. § 2201. (Dkt. 1) Specifically, State Farm requests this Court declare that State Farm owes no duty to defend or indemnify Socorro or Global Pioneer in the Underlying Action as a matter of law. (Id.) Defendants Taylor and Faulk answered the Complaint, (Dkt. 14), but Defendants

Socorro and Global Pioneer have strategically failed to appear in this action despite having been served. (Dkts. 18, 19) The Clerk has entered a Clerk's default against Socorro and Global Pioneer. (Dkts. 25, 27) State Farm now moves for summary judgment in its favor against all Defendants. (Id.) Additionally, State Farm requests an entry of final default declaratory judgment against Defendants Socorro and Global Pioneer. (Id.)

## II. LEGAL STANDARDS

### a. Summary Judgment

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009) (citing Welding Servs., Inc. v. Forman, 509 F.3d 1351, 1356 (11th Cir. 2007)). Which facts are material depends on the substantive law applicable to the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

Evidence is reviewed in the light most favorable to the non-moving party. Fennell, 559 F.3d at 1216 (citing Welding Servs., Inc., 509 F.3d at 1356). A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the Court that there is an absence of evidence to support the non-moving party's case. Denney v. City of Albany, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted).

When a moving party has discharged its burden, the non-moving party must then designate specific facts (by its own affidavits, depositions, answers to interrogatories, or admissions on file) that demonstrate there is a genuine issue for trial. Porter v. Ray, 461 F.3d 1315, 1320-1321 (11th Cir. 2006) (citation omitted). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value."). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

### b. Default Judgment

Under Federal Rule of Civil Procedure 55, a court may enter a default judgment if it has jurisdiction over the claims and parties and there is a sufficient basis in the pleadings to support the relief sought. Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975);[2] Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245 (11th Cir. 2015). In defaulting, a defendant admits the plaintiff's well-pled allegations of fact. Id. at 1245. Thus, if the allegations of the complaint, accepted as true, establish the defaulted defendant's liability, then the court should enter

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

judgment against the defendant. Chanel, Inc. v. besumart.com, 240 F. Supp. 3d 1283, 1288–89 (S.D. Fla. 2016). But "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. In short . . . a default is not treated as an absolute confession of the defendant of his liability and of the plaintiff's right to recover." Nishimatsu Constr. Co., 515 F.2d at 1206.

## III.    DISCUSSION

State Farm argues it is entitled to a declaration that it is not obligated to indemnify or defend Global Pioneer or Socorro in the Underlying Action. First, State Farm asserts that neither Socorro nor Global Pioneer meet the policies' definition of "insured." (Dkt. 29 at 9–11) Next, State Farm argues that the terms of the policies do not provide coverage for the accident in which Defendant Taylor was injured. (Id. at 11–13) Finally, State Farm argues that it is not estopped from denying liability coverage to Global Pioneer or Socorro because estoppel does not create coverage where coverage does not exist. (Id. at 13–14)

In response, Defendants Taylor and Faulk argue that State Farm must defend and indemnify Global Pioneer and Socorro because State Farm's agent, Flowers, certified coverage to Global Pioneer. (Dkt. 31 at 5–7)

In support of their position, Defendants point to the Florida Insurance Code, which defines an insurance policy as "a written contract of insurance . . . or the certificate thereof." § 627.402(3), Fla. Stat. (2024). Defendants also rely on the opinion of an unreported Eleventh Circuit decision, in which the panel ruled that a certificate of insurance that named an entity entitled the entity to coverage even though the policy

did not identify the entity as an additional insured. Liberty Mut. Fire Ins. Co. v. State Farm Fla. Ins. Co., Nos. 20-12970, 20-13637, 2022 WL 1025164 (11th Cir. Apr. 6, 2022).[3] Defendants argue Flowers had the authority to bind State Farm with the certificates of liability insurance that named Global Pioneer as the insured; therefore, the certificates obligate State Farm to insure Global Pioneer.

In reply, State Farm distinguishes the facts of Liberty Mutual from the facts of this case. (Dkt. 33 at 4–5) State Farm further argues that certificates of insurance are not parts of insurance policies and generally cannot create legal obligations. (Id. at 6) Finally, State Farm notes that the certificates here specifically disclaimed that they created any obligations or otherwise amended or altered the coverage afforded by the policies. (Id. at 10) In support of its position, State Farm cites another Eleventh Circuit panel opinion, Official Cargo Transport Co., Inc. v. Underwriters at Lloyd's of London, 143 F. App'x 173 (11th Cir. 2005).

### a. State Farm is not entitled to summary judgment against Defendants.

The Court finds State Farm is not entitled to a summary judgment declaring that it owes no duty to defend or indemnify Defendants Global Pioneer and Socorro. Under Florida law, the interpretation of language in an insurance policy and the construction and effect of such policy are questions of law properly decided on

---

[3] The Court notes that "[a]lthough an unpublished opinion is not binding on this court, it may be considered as persuasive authority. See 11th Cir. R. 36-2." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000). Where cited herein, any unreported decision of a panel of the Circuit is considered well-reasoned and is offered as persuasive, not binding.

11

summary judgment. Swire Pac. Holdings, Inc. v. Zurich Ins., 845 So. 2d 161, 165 (Fla. 2003). By their plain terms, the policies do not provide coverage to Global Pioneer or Defendant Socorro for the accident that injured Taylor. Nonetheless, if a certificate of liability insurance is issued by the insurer, or by someone with the actual or apparent authority to do so, and the certificate identifies an additional insured, "the insurer cannot refuse to honor its commitment simply because it was not further documented." Liberty Mut. Fire Ins. Co. v. State Farm Fla. Ins. Co., No. 15-20941, 2019 WL 4739393, at *4 (S.D. Fla. July 19, 2019), aff'd, 2022 WL 1025164 (11th Cir. 2022) (citing Sumitomo Marine & Fire Ins. Co. v. Southern Guar. Ins. Co., 337 F. Supp. 2d 1339, 1353–1356 (N.D. Ga. 2004); Nat'l Union Fire Ins. Co. v. Liberty Mut. Ins. Co., No. 03-80106-CIV, 2008 WL 544732, at *5 (S.D. Fla. Feb. 26, 2008) ("Because the . . . certificate of insurance was drafted and issued by Liberty Mutual's authorized representative . . . on Liberty Mutual's own letterhead, it is evidence, on its face, of LaSalle, Schmier and Mission Bay's 'additional insured' status under Liberty Mutual's policy, regardless of the disclaimer language that the certificate of insurance is issued for 'informational purposes only.'"); Int'l Metalizing & Coatings, Inc. v. M&J Constr. Co., No. 09–cv–643, 2010 WL 3517038, at *4 (M.D. Fla. Sept. 7, 2010) (internal quotations and citations omitted) ("A certificate of insurance issued by the insurer's authorized representative that names an additional insured is evidence of 'additional insured' status.")).

Florida law defines the term "policy" in the context of insurance as "a written contract of insurance or written agreement for or effecting insurance, **or the certificate**

12

**thereof**, by whatever name called, and includes all clauses, riders, endorsements, and papers that are a part thereof." § 627.402(3), Fla. Stat. (2024) (emphasis added). In other cases, when faced with facts like those here, courts in this circuit have found "a manifestation of intent that the certificate be incorporated within the policy because, in part, the agent who countersigned the certificate was the agent of the insurance company." Sumitomo, 337 F. Supp. 2d at 1355. Indeed, in Sumitomo, the court found the certificate's identification of an "additional insured" not identified in the policy granted "additional insured" status despite a clause in the policy that stated:

> This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. The policy terms can be amended or waived only by endorsement issued by us and made a part of this policy.

Id. at 1354.

In Liberty Mutual, an Eleventh Circuit panel ruled that a certificate of insurance issued by State Farm that named Liberty as an additional insured entitled Liberty to coverage even though the State Farm policy did not identify Liberty an additional insured. 2022 WL 1025164, at *3. By way of background, in that case, Liberty Mutual hired a contractor to perform repairs on a house that it insured. Id. at *1. In a written agreement between Liberty and the contractor, Liberty required the contractor to purchase liability insurance that named Liberty as an additional insured. Id.; Liberty Mut. Fire Ins. Co. v. State Farm Fla. Ins. Co., No. 15-20941, 2019 WL 4739393, at *4 (S.D. Fla. July 19, 2019). The contractor purchased two policies from State Farm, and State Farm sent Liberty a certificate of insurance that identified Liberty as an

13

additional insured with reference to the contractor's policies. 2022 WL 1025164, at *1. However, State Farm never actually added Liberty as an additional insured on the policies issued to the contractor. Id. Later, when the contractor destroyed the insured home instead of repairing it, the homeowner sued the contractor for negligence and sued Liberty on theories of vicarious liability and breach of contract, *inter alia*. Id. Liberty sought indemnification from State Farm, which denied Liberty coverage because Liberty was not listed as an additional insured on the contractor's policies. Id. The district court noted that the certificate of insurance was issued "by State Farm agent Robert White on a State Farm form," and that it was "undisputed that Mr. White was authorized to issue certificates of insurance." 2019 WL 4739393, at *14. State Farm asserted that "Mr. White 'was not supposed to' type 'additional insured' on the Certificate[,]" and "that the only way a third party can be added to a policy is by Additional Insured Endorsement." Id. The district court rejected this argument as a matter of law. Id. On appeal, the Eleventh Circuit panel affirmed, stating, "[O]ur Erie guess is that, under Florida law, Liberty's certificate of insurance entitled it to the same coverage as [the contractor] under" the policies.[4] Liberty Mutual, 2022 WL 1025164, at *3.

Here, State Farm's agent issued certificates of insurance that featured State Farm's logo and identified Global Pioneer as an "insured" on Copeland-Gould's

---

[4] The panel noted that in the absence of definitive guidance from the Florida Supreme Court or the Florida appellate courts, "we make an Erie guess that 'attempt[s] to prognosticate how [Florida] state courts would resolve the . . . issue.'" Liberty Mutual, 2019 WL 4739393, at *3 (quoting Fioretti v. Mass. Gen. Life Ins. Co., 53 F.3d 1228, 1235 (11th Cir. 1995)).

14

policies. State Farm does not argue that Flowers acted outside the scope of her authority when she issued the certificates. State Farm argues merely that Flowers issued the certificates in error, but, like the district court in Liberty Mutual, this Court finds this contention irrelevant to the legal question presented. See 2019 WL 4739393, at *14 ("Because the Certificate of Insurance was issued by State Farm through authorized agent Robert White and states that Liberty Mutual is an 'additional insured,' State Farm cannot refuse to honor its commitment simply because it was not documented by a contemporaneously-issued additional insured endorsement.").

In support of its position, State Farm points to cases in which courts declined to find that certificates of insurance modified the scope of insurance coverage provided under the certified policies. Official Cargo Transport, 143 F. App'x at 175 n.1; Progressive Exp. Ins. Co. v. Global Drilling Inc., No. 16-cv-298, 2017 WL 11629877, at *4 (M.D. Fla. Sept. 15, 2017); DTG Operations, Inc. v. Manheim Remarketing, Inc., No. 10–cv–835, 2010 WL 3259697, at *6 (M.D. Fla. Aug. 18, 2010); Robert L. Strauss, P.A. v. Gemini Ins. Co., --- F. Supp. 3d ----, No. 24-60191, 2024 WL 3558128, at *8–9 (S.D. Fla. July 26, 2024); Gersbeck v. Islamorada Asset Mgmt., Inc., No. 16-CV-10026, 2018 WL 4689116, at *2 (S.D. Fla. Sept. 28, 2018). In these cases, the certificates expressly stated that they do not amend, extend, or alter the coverage afforded by the policies, as do the certificates Flowers issued in this case. (Dkts. 30-2, 30-4) But each of these cases is distinguishable from this case.

First, in Official Cargo Transport, a general broker issued the certificate of insurance, rather than an exclusive broker/agent of the insurance company. 143 F.

15

App'x at 175 n.1. An Eleventh Circuit panel noted that the broker's "'certificate of insurance' did not in any way evidence that [the insurer] had agreed to the addition" of a named insured. Id.

Next, in each of the other cases (with one exception),[5] a certificate holder sought to use the certificate as evidence that the certificate holder was covered by the insurance policy; the certificates, however, did not identify the certificate holders as "insureds" or "additional insureds." Progressive Express, 2017 WL 11629877, at *4; DTG Operations, 2010 WL 3259697, at *6; Robert L. Strauss, P.A., 2024 WL 3558128, at *9. The courts noted that each certificate stated it "confers no rights upon **the certificate holder**." Progressive Express, 2017 WL 11629877, at *4; DTG Operations, 2010 WL 3259697, at *6; Robert L. Strauss, P.A., 2024 WL 3558128, at *9. The courts declined to extend coverage to the certificate holders where they were not named as an insured in either the policies or the certificates.

In contrast, the certificates in this case were issued by an exclusive broker/agent of State Farm who testified she was authorized to issue certificates of insurance on behalf of State Farm. And, unlike the other cases cited, the certificate holder, Access2Care, is not seeking to use the certificates to prove State Farm insured

---

[5] In Gersbeck v. Islamorada Asset Mgmt., Inc., an insurance company urged the court to interpret the coverage defined in the policy according to how it was described in a certificate of insurance. No. 16-CV-10026, 2018 WL 4689116, at *2 (S.D. Fla. Sept. 28, 2018). The court declined: "[T]he Certificate of Insurance (DE #99-5) is not relevant in interpreting the Policy. It expressly states on each of its two pages that '[t]his certificate does not amend, alter or extend the coverage afforded by the policy referenced' (id.)." Id.

16

Access2Care. Instead, the dispute is whether the certificates that name Global Pioneer as an insured obligate State Farm to insure Global Pioneer.

Based on the foregoing, the Court finds State Farm is not entitled to summary judgment. See Liberty Mutual, 2019 WL 4739393, at *4, aff'd, 2022 WL 1025164; Sumitomo Marine & Fire, 337 F. Supp. 2d at 1353–1356; Nat'l Union Fire, 2008 WL 544732, at *5; Int'l Metalizing & Coatings, 2010 WL 3517038, at *4. The Court, however, cannot conclude that State Farm *is* obligated to defend or indemnify Global Pioneer as a matter of law. First, there is no cross-motion for summary judgment, and second, factual questions preclude such a conclusion.

The undisputed facts of this case establish Copeland-Gould obtained certificates of insurance that certified State Farm insured Global Pioneer when she knew or should have known that her insurance policies did not include Global Pioneer as an additional insured. This was done to fulfill Global Pioneer's obligation under the subcontractor agreement with Access2Care, LLC. By extension, if Global Pioneer had not been able to demonstrate to Access2Care, LLC that it was covered as certified by Flowers, presumably Taylor and Faulk would not have been in the vehicle operated by Global Pioneer at the behest of Access2Care, LLC. The record, however, does not establish whether Copeland-Gould obtained the certificates through fraud. If there was fraud, the record does not establish that State Farm's agent, and therefore State Farm, was not complicit in any fraud.

Whether State Farm's agent engaged in or ratified any potential fraud by Copeland-Gould is relevant to the determination of liability in this case. If evidence

17

presented at trial establishes State Farm engaged in or ratified the fraud, or if it authorized its agent to issue a certificate of insurance to Copeland-Gould, or if it failed to properly supervise its agent such that this error was permitted, the Court would be disinclined to absolve State Farm of liability as a matter of law.

### b. State Farm is not entitled to default judgment against Defendants Global Pioneer and Socorro.

The Court finds the entry of a default declaratory judgment in favor of State Farm against Defendants Global Pioneer and Socorro is not proper. "[E]ven when defendants are similarly situated, but not jointly liable, judgment should not be entered against a defaulting defendant if the other defendant prevails on the merits." Gulf Coast Fans, Inc. v. Midwest Elecs. Importers, Inc., 740 F.2d 1499, 1512 (11th Cir. 1984) (citations omitted) ("If Gulf Coast had sued Midwest and PAX claiming that they were jointly liable, and if PAX had defaulted, but Midwest had prevailed at trial, it would be clear that Gulf Coast could not obtain a default judgment against PAX."). In this case, State Farm sues Defendants Global Pioneer, Socorro, Taylor, and Faulk, seeking a declaratory judgment that it is not obligated to indemnify or defend Global Pioneer or Socorro in the Underlying Action. State Farm is not entitled to summary judgment. So, absent settlement or some alternative resolution, this case will proceed to a trial, at which it is possible Defendants Taylor and Faulk prevail. Thus, an entry of default declaratory judgment against Defendants Global Pioneer and Socorro at this time would be premature and improper.

Moreover, the Court finds that an entry of default judgment against Global

Pioneer and Socorro due to a strategic failure to defend could unfairly prejudice Defendants Taylor and Faulk.

## IV. CONCLUSION

Accordingly, it is hereby **ORDERED** that Plaintiff State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment and Default Final Declaratory Judgment, (Dkt. 29), is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida, this 11th day of March 2025.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any *pro se* party